UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM DAVID HICKS, JR.,

    Plaintiff,      Case No. 2:21-cv-11563
               District Judge Denise Page Hood
v.             Magistrate Judge Anthony P. Patti

HEIDI WASHINGTON, *et al*.,

    Defendant(s).
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 39)

## I. **RECOMMENDATION**:  The Court should **GRANT IN PART** and **DENY IN PART** the MDOC Defendants' motion for summary judgment on the basis of exhaustion (ECF No. 39).

## II. **REPORT:**

### A. **Background**

William David Hicks, Jr. is currently confined at the Michigan Department of Corrections (MDOC) Central Michigan Correctional Facility (STF).   In June 2021, while confined at Thumb Correctional Facility (TCF), Hicks filed this lawsuit *in pro per* against fourteen Defendants.  The Court's March 21, 2022

opinion and order of partial dismissal dismissed seven Defendants.  (ECF No. 12,

PageID.284-285.)

Thus, only seven Defendants remain, namely MDOC Director Heidi

Washington, TCF Warden Chandler Cheeks, TCF Assistant Deputy Warden Ora

Carter, TCF Acting Deputy Warden Mark McDonald, TCF Health Unit Manager

(HUM) Janet Nixon, TCF Registered Nurse Supervisor Dawn Kruchko-Copely,

and TCF Registered Nurse Donna Sword.  (ECF No. 1, PageID.3-5.)  (*See also*

ECF No. 34; ECF No. 39, PageID.575.)  Each has appeared via counsel.  (ECF No.

34.)

**B.    Pending Matters**

Judge Hood has referred this case to me for pretrial matters.  (ECF No. 17.)

Currently before the Court are:

1.   Plaintiff's motion for temporary restraining order (TRO) and a
     preliminary injunction (PI) (ECF No. 16), as to which a report
     and recommendation (ECF No. 32), an objection (ECF No. 42),
     a motion to object (ECF No. 62), and a related response (ECF
     No. 70) are before Judge Hood;

2.   Defendants' motion for summary judgment on the basis of
     exhaustion (ECF No. 39), as to which a response (ECF No. 54)
     and a reply  (ECF No. 57) have been filed;[1]

---

[1] Although this motion (ECF No. 39) was not filed on behalf of Defendant Sword,
Sword was a party to other filings (ECF Nos. 34, 35, 38, 57, 58).  This is perhaps a
scrivener's error, as the motion clearly advocates that Plaintiff "did not exhaust any
claims against Sword . . . ."  (ECF No. 39, PageID.589.)

3.      Plaintiff's motion for emergency relief (ECF No. 47) and
        Plaintiff's motion for emergency preliminary injunction (ECF
        No. 60), as to which a report and recommendation (ECF No.
        74) is before Judge Hood; and,

4.      Multiple motions filed by Plaintiff on November 22, 2022 and
        December 9, 2022 – a request for *inter alia* "sealing of this
        record[,]" (ECF Nos. 76), a motion to prove retaliation for
        engaging in protected conduct (ECF No. 77), & multiple
        motions for leave to amend (ECF Nos. 75, 79, 80) – and what
        appears to be a proposed, amended complaint (ECF Nos. 81,
        82).

This report concerns Defendants' motion for summary judgment only (ECF No.

39). The other still pending motions will be dealt with in due course, although

Plaintiff is warned that, by continuing to file pretrial motion after pretrial motion,

he is inevitably delaying the certification of his case for trial.

## C.    Discussion

### 1.    The operative pleading (February 2020 – April 2022)

Plaintiff alleges the events giving rise to his claim arose at TCF from

February 2020 to present, although he more specifically alleges March 14, 2020 to

present. (ECF No. 31, PageID.515.) He submitted the operative pleading to the

Court in April 2022, although the Clerk filed it separately in June 2022. (*See* ECF

No. 14, PageID.292- 339; ECF No. 31.) Therefore, Plaintiff's claims concern the

alleged events at TCF from February or March 2020 to at least April 2022.

Substantively, Plaintiff's claims against Washington and/or Cheeks concern,

*inter alia*, daily staff testing, inaccurate COVID-19 information on the MDOC

3

website, ventilation, law library access, access to the barbershop, Mediation

Assisted Treatment (MAT) for his opiate abuse disorder (OAD), and treatment

attendant to assault and/or rape.  (*Id*., PageID.497-504.)  For the most part,

Plaintiff's claims against Carter, McDonald, Nixon, Kruchko-Copely, and Sword

concern treatment for "lumps or tumors in [hi]s neck, pains in [his] throat, and

swollen lymph nodes all around [his] head and neck[,]" treatment incident to rape,

and/or treatment for "opiate abuse disorder."  (*Id*., PageID.505-512.)  Plaintiff also

mentions a misconduct ticket issued by Sword and McDonald's participation in the

related appeal.  (*Id*., PageID.507-508, 512.)  Plaintiff's alleged injuries include an

unknown tumor in his neck, rectal pain from a rape, mental and emotional trauma,

and denial of mediation for treatment of addiction.  (ECF No. 31, PageID.521.)

## 2.    Exhaustion

The MDOC Defendants move for dismissal of this lawsuit, arguing that

Plaintiff "failed to exhaust administrative remedies on his claims against MDOC

Defendants."  (ECF No. 39, PageID.580.)  "No action shall be brought with respect

to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

### a.    First Amendment access to courts

Plaintiff is incarcerated for a sentence imposed on June 13, 2019 in *People v. Hicks*, No. 18-006331-FC (Kent County).  (*See* www.michigan.gov/corrections, "Offender Search.")  On December 13, 2019, seemingly via counsel, Plaintiff filed a delayed application for leave to appeal, which the Court of Appeals denied on February 14, 2020 due to "lack of merit in the grounds presented."  *See People v. Hicks*, No. 352181 (Mich. App.).  On December 12, 2020, the Clerk of the Supreme Court of Michigan rejected Plaintiff's late filed application.  (*Id*.)

In this lawsuit, within his claims against Washington and/or Cheeks, Plaintiff alleges that Warden Cheeks' closure of the law library "due to Covid-19" ultimately caused his "direct appeal to the Michigan Supreme Court to be rejected as untimely[,]" explaining:

> I was only 29 days into my 56 day deadline when the Warden closed the law library.  I received my denial from the Michigan Court of Appeals on Feb[r]uary 20, 2020, and the order was issued on [February 14, 2020].  The law library was closed on [March 14, 2020].  It may have been less than 29 days from the decision of the Court[;] however, I received it on Feb[r]uary 20th, 2020.  This violates my 1st Amendment right to access to the courts.

(ECF No. 31, PageID.501.)  He sues Cheeks and Washington in their individual capacities, stating, *inter alia*, that "[w]ithout this closure of the law library . . . [,]" he "would have gotten back on [his] Appeal and [he would not] have suffered any of these injuries."  (*Id*., PageID.501-502.)

The right of access to courts "is limited to safeguarding prisoners' ability 'to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement.'"  *Scott v. Lamb*, No. 2:16-CV-13462, 2017 WL 3038255, at *12 (E.D. Mich. June 29, 2017)(quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)), *report and recommendation adopted*, No. 16-CV-13462, 2017 WL 3034677 (E.D. Mich. July 18, 2017).  "Under 42 U.S.C. § 1997e(a), Plaintiff must exhaust . . . access to courts claims in accordance with MDOC PD 03.02.130." *Peltier v. Constance Derakhshandeh*, No. 2:15-CV-13717, 2016 WL 7733978, at *4 (E.D. Mich. Sept. 16, 2016), *report and recommendation adopted sub nom. Peltier v. Derakhshandeh*, No. 15-CV-13717-DT, 2017 WL 106425 (E.D. Mich. Jan. 11, 2017).

Defendants argue that the Court should dismiss Plaintiff's access-to-the-courts claim, because he "did not raise that issue at Step I in any of the grievances he pursued through Step III."  (ECF No. 39, PageID.587-588.)  In response, Plaintiff seems to admit there is no related grievance, claiming "the issue of the Warden closing the Law Library due to Covid 19 is not a grievable issue," and further claiming he "was directed to take this issue up with the Wardens forum because it affects the entire prison population."  (ECF No. 54, PageID.888-889; *see also id.*, PageID.894-895.)  Assuming Plaintiff was so advised, perhaps the advisor

had a certain provision of the grievance policy in mind.[2]  In any event, Defendants

do not dispute this in their reply; thus, the Court has no reason to doubt the claimed

advice.  And regardless of whether Plaintiff was actually *told* that – an assertion

that is not supported by an affidavit or declaration – his *argument* that these are

non-grievable issues is logical, persuasive and unrebutted.  Accordingly, Plaintiff

should be permitted to proceed with the access to courts claim alleged in his

operative complaint.[3]

---

[2] *See*, *e.g.*, MDOC PD 03.02.130 ¶ J(8) ("A grievance shall be rejected if "[t]he
prisoner is grieving content of the policy or procedure except as it was specifically
applied to the grievant.  If a prisoner has a concern with the content of a policy or
procedure, s/he may direct comments to the Warden's Forum as provided in PD
04.01.105 'Prisoner Housing Unit Representatives/Warden's Forum.'").  (ECF No.
39-2, PageID.598.)

[3] Likewise, it would seem Defendants do not challenge Plaintiff's barbershop or
daily staff testing claims in their present motion.  Although the Court's March 21,
2022 order of partial dismissal concluded that "Plaintiff's factual allegations
[within the original complaint] are insufficient to show that the Defendants' failure
to require daily testing violated his Eighth Amendment rights[,]" (ECF No. 12,
PageID.278), in his *operative pleading*, Plaintiff mentions daily staff testing within
his claims against Washington and/or Cheeks (ECF No. 31, PageID.497-499).  He
also mentions closure of the barbershop, alleging that barbering "is a hygiene
requirement . . . ." (*Id.*, PageID.502.)  Defendants do not mention these issues
within their motion or their reply, even though Plaintiff mentions them within his
response (ECF No. 54, PageID.889, 894, 895, 896).  Accordingly, this report
assumes Defendants agree that the issues of daily staff testing and the barbershop
are not grievable per MDOC PD 03.02.130 ¶ J(8), as Plaintiff seemingly contends.
To the extent, if at all, Plaintiff revived his daily staff testing claim in his amended,
operative complaint (ECF No. 31), then it may be the subject of a future
dispositive motion.

### b.   Eighth Amendment

Plaintiff alleges that Defendants have violated his Eighth Amendment rights, *e.g.*, by way of cruel and unusual punishment, inhumane living conditions, failure to protect (rape), and intentional retaliation.  (ECF No. 31, PageID.495.)  (*See also* ECF No. 31, PageID.497-512.)

### i.   Grievance appeals

The MDOC Defendants correctly note that the "administrative process applicable to Hicks' grievable claims" is governed by MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective March 18, 2019.  (ECF No. 39, PageID.583; *see also* ECF No. 39-2.)  According to Plaintiff's MDOC Prisoner Step III Grievance Report, Plaintiff pursued eight grievances through Step III related to TCF:

- TCF-20-05-0239-28c, which concerns a medical detail for contact lenses and a prescription for migraine medication; it was rejected at Step I for multiple unrelated issues, based on the Step I category code (reviewed by Carter), it was rejected at Step II as untimely, and the Step II rejection was upheld at Step III.  (ECF No. 39-3, PageID.637-640);

- TCF-20-05-0240-28c, which concerns swollen lymph nodes in his neck and nurses asking officers to harass him; it was rejected at Step I for multiple unrelated issues, based on the Step I category code (reviewed by Carter), it was rejected at Step II as untimely, and the Step II rejection was upheld at Step III (*id.*, PageID.633-636);[4]

---

[4] Quickly pausing to consider what Defendants mean by "based on Step I category code," (ECF No. 39, PageID.578), they explain the parts of a Grievance Identifier,

- TCF-20-06-0307-28e, which concerns non-party PA Couturier and painful, swollen lymph nodes in his neck; the grievance was denied at Step I (reviewed by Nixon), it was denied at Step II, and it was rejected at Step III as untimely (if not also vague) (*id.*, PageID.641-647);

- TCF-20-06-0312-27Z, which concerns the exhaust fan and ventilation; the grievance was rejected at Step I, because "[t]he purpose of the grievance process is to provide redress for alleged policy violations by staff[,]" (reviewed by Carter), the Step I rejection was upheld at Step II, and the Step II rejection was upheld at Step III (*id.*, PageID.648-653);

- TCF-20-09-0669-28A, which concerns an alleged interaction with non-party C/O Delosh; the grievance was rejected at Step I as duplicative of TCF-20-09-668-17A (signed by Douglas on behalf of Carter), it was denied at Step II as "determined to have been denied appropriately" at Step I, and the rejection was upheld at Step III (*id.*, PageID.623-627);

- TCF-20-09-0706-28I, which concerns Sword, treatment for lumps in Plaintiff's throat, and Sword's retaliatory issuance of a misconduct for insolence; it was rejected at Step I for failure to attempt resolution prior to writing the grievance (signed by Douglas on behalf of Carter), it was denied at Step II as

---

the last portion of which is a "grievance category code." (ECF No. 39, PageID.576 n.1.) Seemingly referring to "28c," Defendants explain TCF-0239 and TCF-0240 were "rejected for multiple unrelated issues . . . ." (*Id.*, PageID.578.) The Court has been unable to confirm these MDOC category codes, and, to complicate matters, the attached grievance papers only show signatures for the Step I response (*i.e.*, there is no explanation for the Step I response). Nonetheless, as will be discussed below, Plaintiff's response does not seem to rely on TCF-0239, and Plaintiff seems to agree that "TCF-240 was first rejected for having multiple issues at step #1, and then for being untimely at step #2." (ECF No. 54, PageID.891.) And, even if the Court did not take the MDOC's word that these grievances were rejected at Step I for this particular reason, it is clear that these grievances were rejected at Step II as untimely. (ECF No. 39-3, PageID.635, 639.)

"appropriately denied" at Step I, and the rejection was upheld at Step III (*id.*, PageID.628-632; ECF No. 42, PageID.774-777);

- TCF-21-11-1052-12B, which concerns TCF "mental health staff" and mental health treatment; the Step I grievance was denied (reviewed by McDonald), it was denied at Step II (signed by Defendant Cheeks), and it was denied at Step III (ECF No. 39-3, PageID.610-615);

- TCF-21-11-1068-17Z, which concerns, *inter alia*, placement by ADW Carter, Warden Cheeks' alleged denial of a request to move, a rape in Franklin Unit, and mental health treatment; the grievance was deemed "partially resolved" at Step I (reviewed by ADW McDonald), it was rejected at Step II as tardy (reviewed by Warden Cheeks), and denied at Step III (because Plaintiff's "issue was in fact considered, investigated, and a proper decision was rendered.") (*id.*, PageID.616-622).

(ECF No. 39-3, PageID.608-609; *see also* ECF No. 39, PageID.577-579.)

### ii.   Timing and receipt of Step III responses

Some comments about the MDOC's timing of Step III responses and Plaintiff's receipt of those Step III responses are worth mentioning here.  The MDOC Prisoner Step III Grievance Report indicates that Plaintiff's eight Step III appeals were received between July 14, 2020 and January 18, 2022, and the related Step III responses were mailed between August 24, 2020 and February 9, 2022 (*id.*, PageID.608-609).  Plaintiff claims, without reference to a specific grievance, that the Step III grievance appeal responses were "not responded to in a timely manner or within 60 business days, like policy suggests."  (*Id.*, PageID.888.)  *See* MDOC PD 03.02.130 ¶ II ("*Generally*, Step III responses will be responded to

10

within 60 business days.") (emphasis added) (ECF No. 39-2, PageID.603).

Perhaps Plaintiff is referring to the 91 days from the MDOC's receipt of TCF-0669 and TCF-0706 at Step III (October 29, 2020) to the date the Step III appeal responses were mailed (January 28, 2021). (ECF No. 39-3, PageID.608.) If so, the significance of the arguable 31 day delay (*i.e.*, from December 28, 2020 to January 28, 2021) for these two grievances is not clear. Plaintiff also contends, although not under oath, that he "is just now seeing many step #3 responses, for the first time," and he "NEVER RECEIVED A STEP #3 response until this Case forced a response." (ECF No. 54, PageID.881, 888, 895.) Even so, for purposes of the instant exhaustion-based motion, it is not clear that the timing of Plaintiff's *receipt* of the Step III grievance makes a difference.[5]

### ii.      Proper exhaustion

Defendants argue that Plaintiff "could not have exhaust[ed] any claims arising out of [most] of the eight grievances . . . ," because most were "rejected during the grievance process." (ECF No. 39, PageID.588.) "[T]he PLRA

---

[5] Incidentally, in his response, Plaintiff contends Defendants are being sued, because "they were aware of the Constitutional Violations . . . and did NOTHING to ameliorate them. They did not seek to resolve the Medical issues involved in these Grievances and Reports, or follow up with me at any time." (ECF No. 54, PageID.879; *see also id*., PageID.880, 885, 886, 889.) However, to the extent Plaintiff's claims against Carter, Nixon, McDonald, and Cheeks are based on their roles in the grievance process, they cannot be liable under 42 U.S.C. § 1983 where "their only roles . . . involve the denial of administrative grievances or the failure to act[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S.

81, 93 (2006) (emphasis added). "Proper exhaustion demands compliance with an

agency's deadlines and other critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the

course of its proceedings." *Woodford*, 548 U.S. at 90-91 (footnote omitted). This

is the law, notwithstanding Plaintiff's contention that "Defendants are attempting

to dismiss[his] serious medical issues on a technical rule, which shows

indifference." (ECF No .54, PgaeID.883.)

> **(a)    TCF-239, TCF-706, TCF-240, TCF-307, TCF-312, and TCF-669**

Of Plaintiff's eight grievances appealed to Step III, as detailed above and as

described in the MDOC Prisoner Step II Grievance Report, six were rejected. (*See*

ECF No. 39-3, PageID.608-609.) "As long as the state clearly rejects a grievance

for a reason explicitly set forth in the applicable grievance procedure, 'a

subsequent § 1983 claim based on the grievance will be subject to dismissal for

failure to properly exhaust.'" *Burnett v. Howard*, No. 2:09-CV-37, 2010 WL

1286256, at *1 (W.D. Mich. Mar. 30, 2010) (quoting *Grear v. Gelabert*, No. 07-

cv-203, 2008 WL 474098, at *2 n. 1 (W.D. Mich. Feb.15, 2008)).

In his response, Plaintiff does not seem to rely upon TCF-239 or TCF-706,

but he mentions the others as follows:

- As to TCF-240, which appears to have been rejected at Step I for multiple unrelated issues, was rejected at Step II as untimely, and had the Step II rejection upheld at Step III (*id.*, PageID.633-636), Plaintiff claims the multiple issues were "all medical related," and the Step II appeal was not untimely (ECF No. 54, PageID.891).  Even assuming, *arguendo*, the Step I grievance was improperly rejected, Plaintiff provides no evidence that his Step II appeal was timely, other than stating "[w]e were under Covid lockdown at this time, and I never submitted anything untimely because I was locked in my cell." (*Id.*)  (*See also* ECF No. 57, PageID.924.)

- As to TCF-307, which concerns non-party PA Couturier and painful, swollen lymph nodes in his neck, the record indicates the Step II response was returned to Plaintiff on July 24, 2020, and was due at Step III on August 8, 2020; however, it was not received at Step III until August 21, 2020 and, therefore, was rejected at Step III as untimely.  (ECF No. 39-3, PageID.609, 641-642; ECF No. 42, PageID.709.)  Preliminarily, Plaintiff correctly notes the grievance appeal was not late (ECF No. 54, PageID.882, 887, 891), as he references an August 7, 2020 disbursement form and a certified mail card stamped August 17, 2020 (ECF No. 42, PageID.710-711).  Although "[g]rievances and grievance appeals at all steps shall be considered filed on the date *received by the Department*[,]" MDOC PD 03.02.130 ¶ T (ECF No. 39-2, PageID.600) (emphasis added), Defendants' argument – *i.e.*, "[e]ven if Hicks mailed TCF-307 on August 7, 2020, there is no way that it could have been received by the MDOC at Step III on August 8, 2020[,]" (ECF No. 57, PageID.921-922) – is unavailing. This is so, because the same policy also provides that "[t]o file a Step III grievance, the grievant must *send* a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section within ten business days after receiving the Step II response . . . ."  MDOC PD 03.02.130 ¶ HH (ECF No. 39-2, PageID.603 (emphasis added).)  As one Court has already suggested, this is the equivalent of a "mailbox rule."  *Fox v. Jenkins*, No. 4:21-CV-12950, 2022 WL 18107234, at *4 (E.D. Mich. Nov. 14, 2022) (Morris, M.J.), *report and recommendation adopted*, No. 21-CV-12950, 2023 WL 22908

(E.D. Mich. Jan. 3, 2023).  Plaintiff having provided evidence that he mailed the TCF-307 Step III grievance appeal before it was due, it should not have been rejected as untimely. Nonetheless, even though Plaintiff's operative pleading mentions "swollen lymph nodes all around my head and neck[,]" (ECF No. 31, PageID.509), PA Couturier is not a party to this lawsuit.

- As to TCF-312, which concerns the exhaust fan and ventilation, the record indicates it was rejected at Step I, because "[t]he purpose of the grievance process is to provide redress for alleged policy violations *by staff*[,]" (ECF No. 39-3, PageID.651-652 (emphasis added).  Contrary to Defendants' arguments that TCF-312 "did not concern nay claims raised in this lawsuit," (ECF No. 39, PageID.591; ECF No. 57, PgaeID.924), ventilation is mentioned within Plaintiff's description of his claims against Washington and/or Cheeks (ECF No. 31, PageID.500-501).  Likely in response to Defendants' contention that the grievance was "rejected at Step I for failing to allege any violation of policy[,]" (ECF No. 39, PageID.591), Plaintiff notes that the grievance cited MDOC PD 03.03.130 ("Humane Treatment and Living Conditions for Prisoners") (ECF No. 54, PageID.891-892).  However, it seems here that TCF-312 was rejected for failure to allege *who* violated policy, not failure to specify *which* policy was violated. See MDOC PD 03.02.130 ¶ S ("[d]ates, times, places, and names of all those involved in the issue being grieved are to be included . . . ."  (ECF No. 39-2, PageID.600 (emphasis added).)

- As to TCF-669, which concerns an alleged interaction with non-party C/O Delosh and was rejected at Step I as duplicative of TCF-668 (ECF No. 39-3, PageID.626-627), Plaintiff claims it "was fraudulently rejected as duplicative when the two issues were completely different.  Officer Delosh remained in the bathroom and harassed me for several minutes during this incident."  (ECF No. 54, PageID.891.)  However, even if TCF-669 was improperly rejected as duplicative of TCF-668, Delosh is not a party to this lawsuit; therefore, Defendants correctly note that "TCF-669 did not concern any claims raised in this lawsuit . . . ."  (ECF No. 39, PageID.590.)  This is so, even

though Plaintiff claims he "forgot to put this into [his] suit because of [his] closed head injuries." (ECF No. 54, PageID.891.) Defendants also correctly note that "TCF-668 does not appear in the Step III grievance report, which means that it was not pursued through Step III and therefore could not have exhausted any claims." (ECF No. 39, PageID.590; ECF No. 57, PageID.923-924; *see also* ECF No. 39-3, PageID.608.)

In sum, Plaintiff has not successfully rebutted the evidence that **TCF-239, TCF-706, TCF-240, TCF-307, TCF-312, and TCF-669** were either properly rejected or do not relate to issues in this lawsuit; therefore, these grievances would not operate to properly exhaust Plaintiff's administrative remedies as to any related claims in the operative pleading.

### (b)   TCF-1052

Turning to the two grievances listed on Plaintiff's MDOC Prisoner Step II Grievance Report as denied (*i.e.*, not rejected) (*id.*), **TCF-1052** concerns TCF "mental health staff" and mental health treatment, McDonald reviewed the Step I denial, and Cheeks denied the Step II appeal. (ECF No. 39-3, PageID.612-614; ECF No. 42, PageID.793-798.) Defendants admit this grievance exhausts any claims arising out of it (ECF No. 39, PageID.588); thus, Plaintiff incorrectly describes it as "rejected" (ECF No. 54, PageID.890). Nonetheless, in their reply, Defendants elaborate that this grievance "did not raise any claims asserted in the Complaint." (ECF No. 57, PageID.922-923.) They are not entirely correct on this point, as there are some similarities between the subject matter of the grievance

and Plaintiff's operative pleading.  Looking to Plaintiff's Step I grievance form for

TCF-1052, Plaintiff, *inter alia*, claims to have filed a PREA grievance on October

20, 2021, describes an alleged October 25, 2021 with non-party VanHuelen,

mentions an October 25, 2021 health care request to speak with non-party

Greenlaw (*see* ECF No. 42-1, PageID.800), and states, "[it is] now [November 1,

2021] and I STILL have not seen anyone from Mental Health!"  (ECF No. 39-3,

PageID.613.)  Somewhat similarly, Plaintiff's operative pleading alleges within his

claims against Washington, Cheeks and/or Nixon:

- I have since filed a PREA report requesting outside mental health treatment, and I continue to be denied adequate mental health treatment here at this facility.

- I most definitely suffer from PTSD because of this incident.

- Warden Cheeks has also failed to protect by assuring I receive proper medical care here at this facility, as well as mental health treatment for the sexual assault.

- I was also raped here at this facility, and NIXON is aware of this[,] [y]et[,] she still has not scheduled me a doctor[']s appointment, or made sure that I am seen by someone other than a nurse!

(ECF No. 31, PageID.503, 504, 509; *see also id*., PageID.499, 500, 505, 507, 509.)

Nonetheless, whatever similarities appear in the subject matter of TCF-1052 and

the operative pleading, the Step I grievance form does not name any of the

remaining Defendants in this case.  *See* MDOC PD 03.02.130 ¶ S (ECF No. 39-2,

PageID.600.)  Accordingly, although Plaintiff pursued TCF-1052 through Step III, it does not operate to exhaust his claims against Washington, Cheeks, and/or Nixon; the same would be true of TCF-1052 as to Plaintiff's claims against Carter, McDonald, Kruchko-Copely, and Sword.

### (c)   TCF-1068

**TCF-1068** concerns, *inter alia*, placement by ADW Carter, Warden Cheeks' alleged denial of a request to move, a rape in Franklin Unit, and mental health treatment (ECF No. 39-3, PageID.619-620).  Defendants attack the utility of this grievance on several bases.

 To begin, Defendants take the position that TCF-1068 "did not involve any claims raised in the lawsuit . . . [,]" (ECF No. 39, PageID.589; ECF No. 57, PageID.923).  However, Plaintiff's operative pleading mentions transfer and rape within his allegations concerning Washington and Cheeks (ECF No. 31, PageID.502, 503, 504).[6]

Also, Defendants correctly note this grievance was "rejected as untimely received at Step II," (ECF No. 39, PageID.589; *id*., PageID.617-618); nonetheless, Plaintiff responds:

> This is a PREA [Prison Rape Elimination Act] grievance which was rejected as untimely, when I was told there was an ongoing

---

[6] Plaintiff also alleges that Nixon is aware of the rape but "still has not scheduled [Plaintiff] a doctor[']s appointment, or made sure that I am seen by someone other than a nurse!"  (ECF No. 509.)

investigation.  I was waiting to hear back from Administration, because they said the grievance was partially resolved, and this would be looked into on an administrative level.  They then lied and said I was wasting time, just to reject a rape grievance and not deal with the merits of the rape.  The step #1 grievance response supp. form, decision summary at the bottom, clearly states[,] "This matter will be looked into on an Administrative level.  Grievance partially resolved."

I was told I had to wait for the investigation, and to be patient.  And then when I heard nothing back, I proceeded to step #2.

. . . This is a serious matter that was simply rejected and swept under the rug here at T.C.F. . . . This Grievance should have never been rejected[.]

(ECF No. 54, PageID.890-891.)  Plaintiff makes a reasonable point on timing, as the Fuller/McDonald November 17, 2021 Step I response does state, "This matter will be look[ed] into on an administrative level.  Grievance partially resolved." (ECF No. 39-3, PageID.622.)  *See McClaine-Bey v. Bury*, No. 2:20-CV-162, 2022 WL 508839, at *5 (W.D. Mich. Jan. 18, 2022) ("A grievance resolved at Step I is exhausted because MDOC P.D. 03.02.130 only contemplates an appeal to Step II when a prisoner is dissatisfied with the Step I response."), *report and recommendation adopted*, No. 2:20-CV-162, 2022 WL 504618 (W.D. Mich. Feb. 18, 2022).  Thus, TCF-1068 was arguably exhausted on November 17, 2021.

Finally, Defendants point out that TCF-1068 was not completed at Step III until February 8, 2022 (ECF No. 39-3, PageID.608) – *i.e.*, a date after the June 17, 2021 initiation of this lawsuit.  (ECF No. 57, PageID.923.)  *See Booth v. Churner*, 532 U.S. 731, 733–34 (2001) (42 U.S.C. § 1997e(a) "requires a prisoner to

exhaust 'such administrative remedies as are available' *before* suing over prison conditions.") (emphasis added).  *See also Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . .") (citation omitted); *Belser v. Woods*, No. 17-2411, 2018 WL 6167330, at *2 (6th Cir. July 6, 2018) ("The latter Step III grievance appeal did not exhaust Belser's administrative remedies because it remained pending when Belser filed his amended complaint[.]").  Yet, this issue may not be so clear cut, because *the operative pleading* was filed on June 27, 2022, months after TCF-1068 was completed at Step III.  It seems the answer to whether TCF-1068 was exhausted "before suing" may depend on whether the claims the grievance encompasses "can be characterized as 'amended,' 'supplemental,' or part of the original complaint."  *Lee v. Birkett*, No. 09-10723, 2009 WL 3465210, at *3 (E.D. Mich. Oct. 23, 2009) (Hluchaniuk, M.J.), *objections overruled*, No. 09-10723, 2009 WL 3806262 (E.D. Mich. Nov. 12, 2009) (Cohn, J.).  "Notwithstanding concerns of judicial efficiency, a plaintiff who pleads unexhausted or improperly exhausted claims cannot come into compliance with the PLRA's exhaustion requirements by simply re-pleading those claims in an amended complaint after proper exhaustion."  *Jackson v. Saverhood*, No. 11-13173, 2013 WL 4507865, at *5 (E.D. Mich. Aug. 23, 2013) (Lawson, J., *adopting*

*report and recommendation of* Hluchaniuk, M.J.) (citing cases).[7]  As noted above,

TCF-1068 concerns, *inter alia*, placement by ADW Carter, Warden Cheeks'

alleged denial of a request to move, a rape in Franklin Unit, and mental health

treatment, and, although the listed date of incident is "unknown," the text of the

grievance mentions reporting "this incident on approx[imately] [October 20, 2021]

. . . [,]" and writing a kite to see mental health on October 25, 2021.  (*See* ECF No.

39-3, PageID.619-620).  Thus, it would seem the matters involved in TCF-1068

could not have been mentioned in the June 17, 2021 original complaint.  Instead,

claims based on matters involved in TCF-1068 set "out … occurrence[s], or

event[s] that happened after the date of the [original] pleading[,]" Fed. R. Civ. P.

15(d), and were, therefore, *supplemental* to the original complaint when they were

filed in the amended complaint, notwithstanding how Plaintiff chose to label the

subsequent pleading.  Accordingly, considering TCF-1068 was exhausted on

November 17, 2021 (months before the June 27, 2022 amended complaint was

filed), and considering the MDOC grievance procedure's provision that "[d]ates,

times, places, and *names* of all those involved in the issue being grieved are to be

---

[7] *See also Murphy v. Grenier*, No. CIV A 07-CV-15248-DT, 2009 WL 1044832, at
*20 (E.D. Mich. Apr. 20, 2009) ("Defendants' extension of *Freeman's* prohibition
on amending to allege exhaustion completed during the pendency of an action to
supplemental claims which are fully exhausted at the time they are proposed would
render Rule 15(d) wholly inapplicable to prisoner actions.") (Friedman, J.,
*accepting in part and rejecting in part report and recommendation of* Komives,
M.J.), *aff'd*, 406 F. App'x 972 (6th Cir. 2011).

included[,]" MDOC PD 03.02.130 ¶ S (ECF No. 39-2, PageID.600 (emphasis added)), TCF-1068 operates to properly exhaust Plaintiff's claims against Washington and/or Cheeks, but only to the extent they are raised in this grievance.

### iii.   Summation

Plaintiff alleges he filed grievances concerning the facts relating to his complaint and "[a]ll grievances were DENIED[.]"  (ECF No. 31, PageID.523.)  Similarly, he argues "[e]very grievance has been exhausted properly through all steps."  (ECF No. 54, PageID.884.)  In various places, he contends the denials and rejections were malicious and/or fraudulent.  (*Id*., PageID.879, 880, 882, 883, 889, 898.)  He contends that the grievance procedure is being used as a "Technical Loophole" to "assist Medical in Denying adequate and timely Medical treatment to a serious medical need[,]" and Defendants "do not seek to address the issues on the Merits[.]"  (*Id*., PageID.880; *see also id*., PageID.881, 884, 886-887, 889, 890, 892, 898.)  He also contends the prison "[cannot], and must not be allowed to employ a process or scheme to reject a grievance or medical request, by any means, to avoid the consequences of intentionally neglecting medical treatment[,]" (ECF No. 54, PageID.887; *see also id*., PageID.880, 886, 887), and he further characterizes as "absurd" Defendants' "conclusion that the Plaintiff has failed to exhaust any Administrative remedies against MDOC Defendants . . . [,]" due to

"the amount of chances the Defendants had to Aid or assist the Plaintiff."  (ECF

No. 54, PageID.896-897.)

In a certain sense, Plaintiff seems to equate the rejection of a grievance with

the denial of a grievance (ECF No. 54, PageID.883, 890), but these responses are

distinguishable.  The former can have an adverse effect upon proper exhaustion,

while the latter generally does not.  In the end, for the reasons detailed above, six

of the eight Step III grievances were either not properly exhausted or do not relate

to issues in this lawsuit, TCF-1052 (although pursued through Step III) does not

operate to exhaust his claims against any remaining Defendant, but TCF-1068

operates to properly exhaust Plaintiff's claims against Washington and/or Cheeks

(only to the extent they are raised in this grievance).

### c.    First Amendment retaliation

On September 8, 2020, Donna Sword issued Plaintiff a Class I misconduct

for insolence on September 1, 2020.  (ECF No. 39-4, PageID.656; ECF No. 42,

PageID.768.)  Plaintiff perhaps challenges Sword's issuance of the misconduct,

and Plaintiff also alleges McDonald "abused his power" and "used intimidation

and the misconduct process to intimidate [Plaintiff] from seeking medical attention

any further."  (ECF No. 31, PageID.507-508, 512.)

### i. Exhausting Sword's issuance of the insolence misconduct

When an inmate claims that he received a retaliatory misconduct ticket, he must exhaust the claim by raising the issue through the hearings and appeals process. This is so because "'[d]ecisions made in hearings conducted by hearing officers of the Hearings and Appeals Division of the Office of Policy and Hearings (OPH)' are non-grievable and 'shall be rejected by the Grievance Coordinator.'" *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) (quoting PD 03.02.130, ¶ F.1 (effective date Dec. 19, 2003)). *See also* MDOC PD 03.02.130, ¶¶ J(9),(11) (effective Mar. 18, 2019) (ECF No. 39-2, PageID.598-599). *Siggers* "established that a prisoner must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the *first* misconduct hearing." *Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019) (Davis, M.J.) (emphasis added) (citing *Siggers*, 652 F.3d at 693-694), *report and recommendation adopted*, No. 15-13826, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019) (Tarnow, J.).[8]

---

[8] Plaintiff challenges the application of *Siggers*, stating: "This Plaintiff makes no argument to be excused from steps #2 and #3 of the grievances procedures." (ECF No. 54, PageID.888.) However, he appears to conflate grievance appeals under MDOC PD 03.02.130 (such as McDonald's Step II decision in TCF-705 or Douglas/Carter's Step I rejection in TCF-706), with misconduct appeals under MDOC PD 03.03.105 (such as McDonald's October 1, 2020 decision).

Hearing Officer Jenkins / Hearing Investigator Buhl found Plaintiff guilty –
although of a Class II misconduct charge of insolence – and sanctioned Plaintiff to
10 days loss of privileges, *i.e.*, from September 26, 2020 to October 6, 2020.  (*Id.*,
PageID.655; ECF No. 42, PageID.769.)   In a section of the Class II misconduct
hearing report labeled, "[e]vidence and/or prisoner statement in addition to
misconduct report[,]" it states:  "Prisoner Hicks . . . was interviewed on the date of
September 16, 2020.  [He] states that he was never insolent towards RN Sword and
Officer Beacoats was the assigned officer in Healthcare.  . . . Hicks also stated that
Officer Beacoats was a witness to him never being insolent." (*Id.*)  Thus,
Defendants seem to represent accurately that "Hicks did not allege retaliation
during the misconduct ticket hearing[.]"  (ECF No. 39, PageID.591.)

### ii. Exhausting McDonald's handling of the related misconduct appeal

"A prisoner aggrieved by a final decision or order of a hearings officer shall
file a motion or application for rehearing in order to exhaust his or her
administrative remedies before seeking judicial review of the final decision or
order."  Mich. Comp. Laws § 791.255(1).  Class I, II and III misconduct appeals
are governed by MDOC PD 03.03.105 ¶¶ SSS-XXX (effective July 1, 2018).
(ECF No. 39-5, PageID.668-669.)  If contesting a Class I misconduct hearing
result, the prisoner submits a Request for Rehearing (CSJ-418); if contesting a

Class II misconduct decision, the prisoner submits a Class II and Class III

Misconduct Appeal form (CSJ-274).  (*Id.*)

Contrary to Defendants' representation that Plaintiff "did not appeal his

[September 2020] guilty finding on this ticket[,]" (ECF No. 39, PageID.579, 591),

and consistent with Plaintiff's statement in response (ECF No. 54, PageID.884-

885), Plaintiff completed a Class II and Class III misconduct appeal form (CSJ-

274), and it appears McDonald denied the appeal on October 1, 2020.  (ECF No.

42, PageID.770-771.)  Although Plaintiff observes the ticket was written several

days after the alleged violation and contends he "most definitely raised the issue of

retaliation to ADW McDonald at the misconduct hearings and appeal," and "was

threatened to 'drop the grievance or I could find myself up north[,]'" (ECF No. 54,

PageID.884, 888), Plaintiff has not produced evidence that he raised the issue of

retaliation at the *initial* (September 24, 2020) misconduct hearing (*see* ECF No.

39-4, PageID.655-656; ECF No. 42, PageID.768-769).  (ECF No. 57, PageID.924-

925.)  Nor has he done so with respect to the misconduct appeal before McDonald.

While Plaintiff provides a copy of his CSJ-274 misconduct appeal form, the typing

in the portion labeled "briefly describe the basis of your appeal" is a poor copy.

(ECF No. 42, PageID.770-771.)  Because it is illegible, the Court cannot determine

whether Plaintiff raised the issue of retaliation before McDonald.[9]

### iii.    Grievances mentioning the misconduct ticket

In his response, Plaintiff points to TCF-20-09-0705-28I (or 12Z), in which

he grieved Sword's issuance of the misconduct ticket for its revelation of personal

medical information and McDonald was the Step II respondent (*see* ECF No. 42,

PageID.772-773).  (ECF No. 54, PageID.883-884.)  Although the text of TCF-

0705's Step I and Step II responses is not clear, Plaintiff claims the grievance was

rejected stating, in part, "THE ATTEMPT TO RESOLVE MUST BE WITH THE

APPROPRIATE INDIVIDUAL."  (*Id.*)  Even assuming TCF-0705 presented a

grievable issue, or even assuming it was improperly rejected at Step I or Step II,

Defendants correctly note it does not appear on Plaintiff's MDOC Prisoner Step III

Grievance Report (ECF No. 39-3, PageID.608-609), *i.e.*, it was not pursued

through Step III.  (ECF No. 57, PageID.922.)  Defendants further note that, if

Plaintiff intended to rely upon TCF-0706, which in part mentioned Sword's

---

[9] In his operative pleading, Plaintiff alleges he "never turned in [his] grievance on
ADW McDonald[,]" because he was "afraid it w[ould] haunt [him] in the future."
(*Id.*, PageID.524.)  It is less than obvious which claim against McDonald – *i.e.*,
medical treatment or misconduct ticket appeal (*see* ECF No. 31, PageID.507-508)
– Plaintiff was afraid to grieve.  Exhaustion of the former requires compliance with
MDOC PD 03.02.130 ("Prisoner/Parolee Grievances").  Exhaustion of the latter
would seem to require compliance with MDOC PD 03.03.105 ("Prisoner
Discipline"), although it is not clear how one would exhaust an alleged retaliatory
misconduct *appeal* decision.

retaliatory issuance of a misconduct for insolence, this grievance "was rejected during the grievance process." (ECF No. 57, PageID.922 n.1.) As detailed above, TCF-0706 was rejected at Step I for failure to attempt resolution prior to writing the grievance (signed by Douglas on behalf of Carter), it was denied at Step II as "appropriately denied" at Step I, and the rejection was upheld at Step III. (ECF No. 39-3, PageID.628-632; ECF No. 42, PageID.774-777). In sum, neither TCF-0705 nor TCF-0706 was properly exhausted.

### D.    Conclusion

As explained in greater detail above: **(1)** Plaintiff should be permitted to proceed with the First Amendment access to courts claim alleged in his operative complaint against Washington and/or Cheeks, as well as his claims concerning the barbershop and daily staff testing (Section II.C.2.a); **(2)** as to Plaintiff's Eighth Amendment claims, TCF-1068 operates to properly exhaust Plaintiff's claims against Washington and/or Cheeks, but only to the extent they are raised in this grievance (Section II.C.2.b); and, **(3)** Plaintiff has not properly exhausted a First Amendment retaliation claim based on Sword's issuance of the insolence misconduct or McDonald's handling of the related misconduct appeal (Section II.C.2.c). Accordingly, the Court should **GRANT IN PART** and **DENY IN PART** the MDOC Defendants' motion for summary judgment on the basis of exhaustion (ECF No. 39).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

28

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: February 28, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE